# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL, | ) )  ) Case No. 2:09CV00072 |
| Plaintiffs, | ) ) |
| | ) **OPINION AND ORDER** |
| v. | ) ) |
| | ) By:  James P. Jones |
| **ROY SILAS SHELBURNE,** | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

*Rick A. Mountcastle, Assistant United States Attorney, Roanoke, Virginia, for the United States of America, and Joseph E. H. Atkinson, Assistant Attorney General of Virginia, Richmond, Virginia, for the Commonwealth of Virginia; Roy Silas Shelburne, Pro Se Defendant.*

In a prior criminal case, Roy Silas Shelburne, a dentist, was convicted of various crimes related to a scheme to defraud Medicaid. The government charged Shelburne with submitting claims for pediatric dental services that were not performed, were unnecessary, or had been previously paid. After he was convicted by a jury, Shelburne was sentenced to prison, fined, and ordered to pay a certain amount of restitution. There was no appeal.[1]

---

[1] For a fuller description of the facts in the criminal case, see *United States v. Shelburne*, 563 F. Supp. 2d 601 (W.D. Va. 2008) (granting in part and denying in part post verdict motions).

Medicaid is a joint federal-state program, funded with state and federal money and administered by state government. In this civil case, both the United States and the Commonwealth of Virginia sue to recover damages, monetary penalties, and interest under either the federal False Claims Act ("FCA"), 31 U.S.C.A. §§ 3729–33 (West 2003), or the state Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code Ann. §§ 8.01-216.1-19 (2007).

The Complaint in this lawsuit sets out allegations that are similar to the illegal conduct alleged in Shelburne's criminal case. The civil pleading alleges that during a three-year period, Shelburne submitted bills for Medicaid patients for work that was not medically necessary, not actually performed, or that had been previously paid.

In response, Shelburne, proceeding pro se, has moved to dismiss the Complaint.[2] The parties have briefed the issues and the motions are ripe for decision.

I

Shelburne has filed seven different motions that seek dismissal on a variety of grounds. I will address each motion separately.

---

[2] Whether Shelburne's pleadings have been ghostwritten by an attorney is unclear.

A

In his Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Shelburne argues that the Complaint does not meet the requirements of Rule 9(b). According to him, the pleading fails because it does not "assert the who, what, when, where, when [sic], and how as it realates [sic] to the presentment of claims to an officer or employee of the Government or the Commonwealth of Virginia. . . . ." (Mot. to Dismiss for Failure to State a Claim ¶ 7.)

Under his 12(b)(6) Motion, Shelburne also argues that the Complaint fails because he never presented the Medicaid claims in question to government agents. Rather, Shelburne asserts he sent claims to government contractors who paid his bills. Shelburne also asserts that Virginia's Medicaid dental program is not a federal entity for purposes of the False Claims Act because it is run by the Commonwealth. Shelburne supports this argument by citing *United States ex. rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 491-92 (D.C. Cir. 2004), in which the court held that Amtrak was not a government entity and therefore, fraudulent claims submitted to Amtrak did not fall within the FCA.

The government counters that under *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), the Complaint meets the pleading requirements of Rule 9(b). According to the government, the Complaint states with

particularity the fraudulent acts because it alleges that on thirteen specific dates Shelburne presented false claims for Medicaid payments. In addition, the Complaint is sufficiently particular because it details the type of claim submitted by Shelburne, why the claim was fraudulent, and the amount in question.

The government rebuts Shelburne's Motion by noting that his submission of claims to government contractors meets the plain language of the federal and Virginia false claims acts, which both require that a defendant submit a false claim to the government, or cause a third party to submit a false claim. The plaintiffs also assert that under the FCA and the VFATA, the direct submission of a fraudulent claim to the federal government is not required for liability to attach.

Under *Harrison,* a complaint, which states "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" meets the particularity requirements for fraud under Rule 9(b). 176 F.3d at 784 (internal citations omitted). In *Harrison*, the Fourth Circuit concluded that the phrase "false claims" should be broadly interpreted in the context of the FCA. 176 F.3d at 788. This interpretation means the FCA includes any fraudulent Medicaid claim that causes the government to lose money. *Id*.

The plaintiffs are correct. *Harrison* supports their argument that the Complaint meets the particularity requirements of Rule 9(b). Moreover, the government correctly asserts that the plain language of the FCA and the VFATA covers claims submitted to a contractor when the contractor is reimbursed by federal or state funds. *See* 31 U.S.C.A. § 3729(c); Va. Code Ann. § 8.01-216.2. It is irrelevant that Shelburne submitted claims to, and was reimbursed by, a private contractor because the contractors were reimbursed by Virginia's Medicaid program.

Shelburne's assertion that I should rely upon *Totten* is also misguided. Since *Totten* was decided, it has been held that presenting a false claim to a "state's Medicaid program is sufficient" for the FCA's presentment requirement because "funds used to pay the claims are predominantly federal." *United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*, No. CIV. 4:07-192 WBS, 2010 WL 910751, at *8 (D. Idaho Mar. 10, 2010) (citing *United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Actavis Mid Atl. LLC*, 659 F. Supp. 2d 262, 269 (D. Mass. 2009)). In addition, "the legislative history of § 3729(a)(1) also confirms that Congress intended the FCA to extend to fraudulent Medicaid claims." *Putnam,* 2010 WL 910751, at *8.

As noted in *Ven-A-Care*, there is one decision in which a district court concluded that state-agency Medicaid programs did not qualify as federal agencies, *United States ex. rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302 (N.D. Ala. 2004). But

the district court later rejected this earlier opinion as too restrictive. *United States ex rel. Brunson v. Narrows Health & Wellness LLC*, 469 F. Supp. 2d 1048, 1053, 1053 n.1 (N.D. Ala. 2006).

The Complaint pleads with sufficient particularity the fraud committed by Shelburne. Further, language of the VFATA and the FCA encompasses fraudulent claims submitted to private contractors working for state-run Medicaid programs. Thus, the agencies to which Shelburne submitted claims constitute the government for purposes of the Virginia and federal false claims statutes.

B

Shelburne argues that the doctrine of laches permits dismissal of the Complaint because the government unreasonably delayed its civil suit. Shelburne asserts he was economically prejudiced because the civil suit was not filed until he was convicted, went to prison, and was stripped of his dental license. If the government had acted earlier, Shelburne argues, he could have worked as a dentist and then he could have afforded counsel for his defense. Shelburne also argues that the delay prejudiced him because his memory of events has faded and the claims in question "have been destroyed and are no longer available to examine, to either support or refute the allegations made in the complaint." (Pl.'s Mot. to Dismiss for Reasons of Laches ¶ 21.)

Virginia argues that the law precludes the use of this affirmative defense for claims brought by the state acting in its governmental capacity. *Morris v. Commonwealth*, 408 S.E.2d 588, 592-93 (Va. 1991). The United States asserts that the affirmative defense of laches in inapplicable because the doctrine applies only to equitable, not legal, claims. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990).[3]

The plaintiffs are correct. The holdings in *White* and *Morris* prevent Shelburne from successfully raising a defense of laches against a claim for monetary damages.

C

Prior to this suit, the parties entered into negotiations in an effort to avoid litigation. As part of the discussions, the parties executed a Tolling Agreement, which tolled the statute of limitations and other time-based defenses between January 1, 2009, and October 1, 2009. The negotiations failed and this suit followed. Shelburne alleges the Complaint was filed beyond the applicable statute of limitations and has moved to dismiss on this ground. Intertwined with this argument is Shelburne's assertion that the Tolling Agreement is invalid.

Shelburne argues that the Tolling Agreement should fail because it lacked consideration. Shelburne also asserts that he did not derive a benefit from the

---

[3] The plaintiffs also assert that the Tolling Agreement entered into by Shelburne bars the laches motion. This argument appears valid, but it is unnecessary to discuss it because the issue can clearly be decided on other grounds.

agreement because the government did not execute the document until February 4, 2009, almost a month after Shelburne's counsel executed the document on his behalf. This delayed execution, Shelburne argues, means "[t]he government also retained their right to bring the civil litigation at any time before, during or after the agreement was signed. . . ." (Mot. to Exclude the Tolling Agreement 3, ¶ 5.) In addition, Shelburne alleges the agreement is invalid because its intent is vague and indefinite.[4]

The plaintiffs argue that the plain language of the agreement clearly indicates the parties sought to toll the statute of limitations from January 1, 2009, through October 1, 2009. The government asserts that its promise to delay litigation constitutes consideration. And, the government counters that the document sets forth the subject matter and terms in definitive language.

Because a consideration of the agreement involves a question of contract law, a state-law question, I must rely upon Virginia case law. In *Alexakis v. Mallios*, 544 S.E.2d 650, 653 (Va. 2001), the Virginia Supreme Court held that when parties release legal claims under a written agreement "'[a] promise to forebear the exercise of a legal right is adequate consideration to support a contract.'" *Alexakis*, 544 S.E.2d 653 (quoting *Hamm v. Scott*, 515 S.E.2d 773, 774 (Va. 1999)).

---

[4] Shelburne also claimed that his attorneys were not authorized to enter into the Tolling Agreement, but he has withdrawn that claim.

The agreement constitutes a valid contract with clear and definite terms. And, the plaintiffs correctly assert that the Tolling Agreement was validly executed in exchange for valuable consideration.

The statute of limitations is not at issue for the Commonwealth's VFATA claims because prior to 2007, the VFATA contained no statute of limitations. The falsified claims alleged in the Complaint date from 2003 to 2006. Therefore, the pre-2007 version of the VFATA applies to Shelburne's case. Because this law had no statute of limitations, there is no time bar to the Commonwealth's claims against Shelburne. Va. Code Ann. § 8.01-231; *see also Bradford v. Nature Conservancy*, 294 S.E.2d 866, 871 (Va. 1982).

The FCA's statute of limitations is six years from the date of filing a false claim. 31 U.S.C.A. § 3731(b). The earliest claim listed in the Complaint is dated February 24, 2003. Due to the Tolling Agreement, the federal government had approximately two months after October 1, 2009, in which it could file suit on a claim submitted on February 24, 2003. The United States filed the present Complaint on November 6, 2009, which is within the limitations period as defined by the FCA and the Tolling Agreement. Therefore, the FCA cause of action is not barred by the statute of limitations.

D

Shelburne argues that under the Double Jeopardy Clause of the Fifth Amendment, this civil action is prohibited because any monetary damages obtained by the plaintiffs would duplicate his criminal sentence.

Shelburne's reply memorandum cites to several cases that discuss the punitive nature of the FCA. Most, if not all, of these cases use the term punitive in consideration of the FCA's penalties and the Eight Amendment's Excessive Fines Clause, not the Double Jeopardy Clause.

The plaintiffs contend that under *Hudson v. United States*, 522 U.S. 93 (1997), the present lawsuit is permissible because civil penalties are not the same as criminal punishment. In *Hudson*, the Court expressly abrogated *United States v. Halper*, 490 U.S. 435 (1989), which had held that the imposition of civil fines under the FCA violated the Double Jeopardy Clause when the defendant had been previously convicted for the same acts under the criminal false claims statute. *Hudson*, 522 U.S. at 100. It does not appear that the Fourth Circuit has considered the FCA and the question of double jeopardy since *Hudson*. Other courts, however, have held that "penalties under the False Claims Act are not criminal punishment for the purpose of the Double Jeopardy Clause in the Fifth Amendment." *United States. v. Rogan*, 517

F.3d 449, 454 (7th Cir. 2008); *United States v. Lamanna*, 114 F. Supp. 2d 193, 198 (W.D.N.Y. 2000).

I find that the Fifth Amendment does not bar this action against Shelburne.

E

Shelburne argues that this lawsuit is barred by the doctrine of res judicata. Shelburne asserts the government is precluded from litigating Medicaid claims that could "have been offered to be sustained or defeated as individual counts of health care fraud in the prior criminal trial." (Def.'s Mot. to Dismiss for Reasons of Res Judicata 7, ¶ 10.)

Res judicata bars subsequent litigation "only when the prior judgment was returned by a court of competent jurisdiction, when the prior judgment was a final judgment on the merits, when the same parties. . .are involved in both suits, when the two actions are based on the same issues and material facts and when the two proceedings present the same cause of action." *United States v. Mumford*, 630 F.2d 1023, 1027 (4th Cir. 1980). And, "[i]t is well established that the government may have both a civil and a criminal cause of action as a result of a single factual situation." *United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996).

Under the doctrine of res judicata, Shelburne's health care fraud conviction does not serve as a bar to this civil suit because the two proceedings do not involve

the same cause of action. In the first case, the United States sought to punish Shelburne for violating federal criminal statutes. Here, the federal government and Virginia seek to recover monetary damages for the false claims Shelburne submitted.

F

Shelburne argues that the Complaint should be dismissed because the government is collaterally estopped from relitigating "the restitution to all victims as a result of the defendant's fraud. . . ." (Mot. to Dismiss for Reasons of Collateral Estoppel 7, ¶ 16.)

Collateral estoppel prevents relitigation of issues that were actually litigated in a prior proceeding if such issues were necessary and essential to the outcome. *United States v. Wight*, 839 F.2d 193, 196 (4th Cir. 1987). The party seeking to assert the defense must establish that: "(1) the issue it seeks to preclude is identical to the one previously litigated; (2) the issue was in fact determined in the prior proceeding; (3) the issue was a necessary part of the decision reached in that proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue." *Buchanan County, Va. v. Blankenship*, 496 F. Supp. 2d 715, 719 (W.D. Va. 2007). A fact determined in a criminal case may under certain circumstances prevent redetermination of that fact in a later criminal case. *See id.* at 719.

Whether the determination of restitution in a criminal case collaterally estops the United States from obtaining greater damages in a FCA lawsuit against the same defendant depends upon the facts. *See United States v. Barnette*, 10 F.3d 1553, 1556 (11th Cir. 1994); *United States v. Peters*, 927 F. Supp. 363, 369 (D. Neb. 1996), *aff'd*, 110 F.3d 616 (8th Cir. 1997); *United States v. Boutte*, 907 F. Supp. 239, 242 (E.D. Tex. 1995), *aff'd*, 108 F.3d 332 (5th Cir. 1997); *United States v. Fliegler,* 756 F. Supp. 688, 695 (E.D.N.Y. 1990);. At this point in the litigation, that issue is not amenable to determination, and I reserve any opinion on it.

II

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motions to Dismiss (DE 9, 13, 15, 19, 21, 23) are DENIED; and
2. The Motion for Payment of Defendant's Legal Fees and Costs (DE 25) and the Motion to Exclude the Tolling Agreement (DE 11) are DENIED.

ENTER: June 24, 2010

/s/ JAMES P. JONES
Chief United States District Judge